IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.  1:10-CR-109 |
| | ) | |
| v. | ) | |
| | ) | Hon. Anthony J. Trenga |
| BRENNA MARIE REILLY | ) | |
| | ) | |
| Defendant. | ) | Sentencing: August 6, 2010 |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING FACTORS**

I.   INTRODUCTION

The United States of America, by Neil H. MacBride, United States Attorney for the Eastern District of Virginia, Justin K. Gelfand, Special Assistant United States Attorney, and Patricia Haynes, Assistant United States Attorney, respectfully submits this memorandum on the sentencing of Brenna Marie Reilly ("defendant").  On May 11, 2010, defendant pleaded guilty to one count of Impersonating an Officer or Employee of the United States, in violation of Title 18, United States Code, Section 912.  Based on a consideration of each of the factors set forth in Title 18, United States Code, Section 3553(a), the United States respectfully requests a within-Guidelines sentence of three months' imprisonment, a term of supervised release, and a fine.

II.   STATEMENT OF FACTS

Brenna Reilly is not, and has never been, an employee of the Federal Bureau of Investigation (FBI) or of any law enforcement agency.  (PSR, ¶ 19).  Nevertheless, from August 2009 through March 2010, Reilly falsely represented to her Arlington, Virginia, neighbors that she was employed by the FBI as a division director and, in her supposedly supervisory capacity,  "hired" an

administrative assistant purportedly on behalf of the FBI. (PSR, ¶¶ 20-23).

In August 2009, Reilly told a neighbor that she entered the FBI as an agent at the age of eighteen. (PSR, ¶ 1). She claimed she worked her way up within the FBI and became a division director. (*Id*.) Three months later, in November, Reilly explicitly told another neighbor, W.M.,[1] that she was in the process of hiring an administrative assistant on behalf of the FBI and she encouraged W.M. to apply for the position. (*Id*. at ¶ 22). At Reilly's direction and consistent with standard hiring practices of the federal government, W.M. completed a Standard Form 86 (SF-86) in which he provided Reilly with his Social Security number, date and place of birth, education, employment and credit history, and the names, addresses, places and dates of birth of his parents, siblings and references. (*Id*.). The next month, in December, Reilly "hired" W.M. as an administrative assistant for the FBI. (*Id*. at ¶ 23). To finalize the arrangement, Reilly fabricated a document with the seal of the United States Department of Justice on its face detailing the terms and conditions of W.M.'s employment and salary information. (*Id*.). Reilly and W.M. signed the document. W.M. then resigned from his managerial position at a trade association to pursue his childhood dream of working for the FBI. (*Id*.).

For several weeks, W.M. believed he was employed by the FBI and performed various tasks at Reilly's direction. (*Id*. at ¶ 24). Among them, W.M. transcribed fictitious interrogations Reilly claimed she had conducted of criminal suspects, edited condolence letters that Reilly drafted to the families of CIA officers who died in a bombing in Afghanistan, and observed Reilly answer telephone calls and text messages she claimed were related to her law enforcement and national security duties. (*Id*.). Reilly also informed W.M. that they were to travel to Germany and Iraq for

---

[1] W.M.'s name has been redacted to protect his privacy and identity.

official FBI business. (*Id.* at ¶ 25). She showed W.M. a document she fabricated that contained FBI and CIA headings purportedly detailing the international travel itinerary for the upcoming trip. (*Id.*).

W.M. spent the Christmas holiday with his parents in New Jersey. In late December, Reilly drove from Arlington, Virginia, to W.M.'s parents' home in New Jersey, where she introduced herself to W.M.'s parents and led them to believe she was a division director of the FBI and their son's supervisor. (*Id.* at ¶ 26).

In total, W.M. maintained what he believed was his employment with the FBI for approximately three weeks. (PSR, ¶ 27). He did not receive any compensation for his labor. However, Reilly told him that he would be paid as soon as FBI officials straightened out a problem with paperwork. (*Id.*).

Meanwhile, Reilly represented to a second neighbor, J.O.,[2] that she was in the process of hiring another administrative assistant on behalf of the FBI. (*Id.* at ¶ 28). Reilly knew that J.O. had lost her job weeks before in a wave of layoffs associated with the national economic downturn. J.O. expressed an interest in the administrative position and, at defendant's direction, J.O. completed an SF-86 with her personal identifying and private information. (*Id.*). Subsequently, Reilly offered J.O. the position with the FBI but J.O. chose not to pursue federal employment. (*Id.*).

III.   PROCEDURAL HISTORY

On March 25, 2010, a federal grand jury returned a True Bill to a one-count indictment charging Reilly with Impersonating an Officer or Employee of the United States, in violation of Title 18, United States Code, Section 912. On May 11, 2010, pursuant to a plea agreement with the United States, Reilly pleaded guilty to the one-count indictment. The parties agreed on a stipulated Statement of Facts, which was filed with the Court on May 11, 2010. The presentence report (PSR)

---

[2] J.O.'s name has been redacted to protect her privacy and identity.

was completed on June 30, 2010. This case is set for sentencing on August 6, 2010.

IV.    DISCUSSION

A within-Guidelines sentence of three months' imprisonment, a term of supervised release, and a fine, is sufficient, but not greater than necessary, to satisfy the purposes set forth in Title 18, United States Code, Section 3553(a). In *Booker*, the Supreme Court rendered the United States Sentencing Guidelines advisory. *United States v. Booker*, 543 U.S. 220, 244-45 (2005). The Court further directed that the trial courts, "while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id*. at 267.

In the wake of *Booker*, the Supreme Court and the United States Court of Appeals for the Fourth Circuit have made clear that sentencing must begin with a properly calculated advisory Guidelines range. *See Gall v. United States*, 128 S.Ct. 586, 596 (2007) ("[T]he Guidelines should be the starting point and the initial benchmark"); *Rita v. United States*, 127 S.Ct. 2456, 2464-65 (2007); *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). Following that determination, "the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

A.    Sentencing Guidelines Calculation

The PSR correctly states that a Guidelines base offense level of 6 applies to the offense of conviction, a violation of Title 18, United States Code, Section 912. *See* PSR at Worksheet A; U.S.S.G. § 2J1.4(a). The PSR further correctly reflects a two-point reduction in the defendant's offense level for acceptance of responsibility. *See* PSR at Worksheet D; U.S.S.G. § 3E1.1(a). Thus, the defendant's final adjusted offense level is 4. Given the defendant's criminal history category

of I, as correctly calculated in the PSR, the resulting advisory sentencing range is zero (0) to six (6) months of imprisonment. *See* U.S.S.G. Sentencing Table.

      B.      Consideration of the Factors Articulated in 18 U.S.C. § 3553(a)

Title 18, United States Code, Section 3553(a) provides that a sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with" the sentencing purposes "set forth" in Title 18, United States Code, Section 3553. In imposing such a sentence, the court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The sentencing court must also consider, *inter alia*, "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A)-(C). Likewise, the court is to fashion a sentence that would "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant." *Id*.

Based on these factors, a within-Guidelines term of three months' imprisonment is not only warranted; it is appropriate.

      *1.*      *Nature and Circumstances of the Offense*

The gravity of defendant's crime cannot be overstated. Reilly impersonated a supervisory federal agent, defrauded two young professionals into giving her their private information on official security clearance paperwork, and induced one of them to quit his managerial position to pursue his childhood dream of working for the FBI. She then directed him to perform discrete tasks for three weeks under the pretext that he was assisting with official FBI business – all without paying him a dime.

Beyond the sheer absurdity of the crime, what stands out from Reilly's conduct is her utter

disregard for the harm she caused to her victims. Reilly did not stop her scheme when she had her neighbors convinced she had a high-level position with the FBI. Instead, in the heart of one of the worst economic recessions in the nation's history, Reilly conned W.M. to resign from a well-paying managerial position at a trade association by substantiating her enticing job offer with a fabricated document detailing the employment conditions and generous salary for a position Reilly knew she had simply made up. The pieces having fallen into place, Reilly then directed W.M. to transcribe fictitious interrogations she claimed she conducted with suspects and had him edit condolence letters she drafted to the families of CIA officers who lost their lives in Afghanistan. Suffice it to say, W.M. not only suffered the financial harm of losing his job and performing three weeks of hard work without pay; he also suffered the humiliation and embarrassment of falling prey to defendant's fraud and, in the process, his fiancee broke off their engagement.

Remarkably, Reilly then proceeded to make matters worse. She victimized another neighbor – this time, J.O., a civil engineer who had recently lost her job due to the national economic downturn. Reilly's *modus operandi* was the same: she offered J.O. a job, directed her to complete official security clearance paperwork with her personal identifying and other private information, and offered J.O. the job. Fortunately, J.O. coincidentally chose not to pursue government employment and thereby inadvertently dodged the financial harm W.M. suffered. Nonetheless, Reilly's conduct undoubtedly subjected J.O. to needless embarrassment, humiliation, and the potential harm and anxiety associated with the transfer of personal identifying and other private information into the hands of a fraudster.

    2.    *History and Characteristics of the Defendant*

Why Reilly committed this crime remains a mystery. However, based on the information

elicited in the PSR, Reilly's conduct does not appear to be a consequence of a rough childhood. To the contrary, Reilly was raised by two loving parents, both of whom she says met all her material and emotional needs. (*See* PSR, ¶ 49). Perhaps remarkably in light of her impersonation scheme, Reilly's past is a story of success: she graduated in the top half of her high school class, attended college in Boston, and earned a four-month internship at the White House. (*Id*. at ¶¶ 50, 66, 67). As the PSR reflects in great detail, she has held a number of legitimate jobs over the course of her life, has continued to seek additional education, and has otherwise abided by the law.

Notably, defendant has seen several mental health professionals and received diagnoses which in no way mitigate or even explain her criminal conduct. Specifically, Reilly has been diagnosed with Major Depressive Disorder (moderate) with borderline histrionic and narcissistic features and with Adjustment Disorder with Depressive Features, both serious conditions but conditions which nevertheless do not appear to have interfered with her ability to live an otherwise law-abiding life.

      3.    *Seriousness of the Offense and the Need to Promote Respect for the Law*

Section 3553 directs this Court to craft a sentence that reflects the seriousness of the offense and the need to promote respect for the law. 18 U.S.C. § 3553(a). Impersonation of a division director of the FBI is patently serious. In fact, Reilly's particular brand of impersonation is particularly harmful insofar as she caused serious harm to two hardworking young professionals. A short term of incarceration (three months), a term of supervised release, and a fine will justly punish Reilly for her conduct and reaffirm that the law has consequences.

      4.    *Deterrence*

This day in age, the need to deter Reilly and others from impersonating federal law

enforcement personnel and from doing so in a way that causes serious financial harm to young professionals in the heart of an economic recession cannot be emphasized enough. Impersonation of any federal employee is a serious matter requiring general deterrence. And, society has an even greater interest in deterring the impersonation of high-level, supervisory federal law enforcement agents. This Court's sentence should reflect that impersonation of a federal agent results in incarceration.

With respect to specific deterrence, Reilly's conduct reflects the fact that she plainly does not take the law seriously. She first made the choice to represent publicly not only that she was employed by the FBI, but that she was the director of a particular division. Then, she publicly announced to her neighbors that she was in a position to hire an administrative assistant. But that was not enough. She pitched the position to a particularly vulnerable neighbor who had dreamed of working for the FBI since childhood. She then went to extremes to have him complete security clearance paperwork and offered him the job. Defendant's entire scheme was elaborate and executed with precision. Reilly even went so far as fabricating a document detailing the terms and conditions of official employment she knew to be a fiction. And, upon W.M.'s acceptance of the job, Reilly actually put him to work on assignments. Only a sentence that includes jail time will reflect the seriousness of Reilly's crimes, promote respect for the law, and provide adequate deterrence to such conduct.

    C.    A Within-Guidelines Sentence of Three Months Accurate Reflects Consideration of the Section 3553(a) Factors in This Case

A sentence of three months' imprisonment, a term of supervised release, and a fine reflects the patently serious offense for which Reilly is now being sentenced. Such a sentence, which is at the middle of the Guidelines range, is justified to deter and punish her for her criminal conduct.

However, it is no greater than necessary or plainly unjust as it falls within the range established by the Guidelines. Although advisory, the Guidelines range remains the "starting point and the initial benchmark" for determining the appropriate sentence. *Gall*, 552 U.S. 38, 128 S.Ct. 586, 596-97 (*citing Rita v. United States*, 551 U.S. 338 (2007)). This is done "[a]s a matter of administration and to secure nationwide consistency," *id*., because the Commission's recommended sentencing range for particular conduct "will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 564 (2007). Thus far, Reilly has not set forth any persuasive argument for leniency, and the PSR contains none. Accordingly, a sentence of three months, a term of supervised release, and a fine, would accomplish the aims of Section 3553.

V. CONCLUSION

Considering the criteria established in Title 18, United States Code, Section 3553(a) and the recommendations contained in the PSR, the United States respectfully requests that the Court sentence the defendant to three months' imprisonment, a term of supervised release, and a fine.

        Respectfully submitted,

        Neil H. MacBride
        United States Attorney

By:     /s/
        Justin K. Gelfand
        Special Assistant U.S. Attorney
        Patricia Haynes
        Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of July, 2010, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Shannon Quill
Office of the Federal Public Defender
1650 King Street
Suite 500
Alexandria, VA 22314
Phone: (703) 600-0800
Fax: (703) 600-0880
Shannon_Quill@fd.org

By:      /s/
Justin K. Gelfand
Special Assistant U.S. Attorney
Patricia Haynes
Assistant U.S. Attorney
Attorneys for the United States
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Fax: (703) 299-3980
justin.k.gelfand@usdoj.gov